**Randi HEBERTSON, Plaintiff and Petitioner,**

v.

**WILLOWCREEK PLAZA, Defendant and Respondent.**

No. 950264.

Supreme Court of Utah.

Sept. 20, 1996.

---

Brian S. King, Salt Lake City, for plaintiff.

John Clyde Hansen, Salt Lake City, for defendant.

### ON CERTIORARI TO THE UTAH COURT OF APPEALS

ZIMMERMAN, Chief Justice:

On a writ of certiorari, plaintiff Randi Hebertson asks us to review a court of appeals decision upholding a trial court's dismissal of her complaint against defendant Willowcreek Plaza. *Hebertson v. Willowcreek Plaza,* 895 P.2d 839 (Ct.App.), *cert. granted,* 910 P.2d 425 (Utah 1995). We affirm.

In reviewing a motion to dismiss, "we accept the factual allegations in the complaint as true and draw all reasonable inferences from those facts in a light most favorable to plaintiffs." *Cruz v. Middlekauff Lincoln–Mercury, Inc.,* 909 P.2d 1252, 1253 (Utah 1996) (citing *Roark v. Crabtree,* 893 P.2d 1058, 1059–60 (Utah 1995)). "We recite the facts accordingly." *Id.*

On December 31, 1988, Hebertson allegedly slipped and fell on the premises of a commercial building located at 8160 South Highland Drive, known as Willowcreek Plaza. Within three days after the alleged accident, Hebertson contacted the building manager, who referred her to an adjuster at State Farm Insurance. In November of 1992, approximately one month before the statute of limitations expired, Hebertson filed a complaint against "Willowcreek Plaza" and served the complaint on one of the managers of Willow Creek Plaza, L.C., which owned the building at the time the complaint was

filed. Willow Creek Plaza, L.C., moved to dismiss the complaint because it did not own the building at the time of the alleged accident.

At the time Hebertson allegedly fell, the building was owned by Bank One, Utah, formerly known as Valley Bank and Trust Company ("Valley Bank"), subject to an undivided eighty percent interest in the property held by Dime Savings Bank of New York, FSB ("Dime Savings"), pursuant to a participation agreement. The banks acquired title to the property after Willow Creek Shopping Village, Ltd., defaulted on its construction loan. Thereafter, Valley Bank entered into various leases with tenants at the building. On all leases, Valley Bank was designated as the landlord, and all leases were executed by Valley Bank and Trust Company. The leases variously referred to the building as "Willow Creek Shopping Village," "Willow Creek Plaza Executive Offices," "Willow Creek Plaza," and "Willow Creek Plaza Development."

On the basis of these facts, the trial court dismissed the original complaint without prejudice.[1] Hebertson then refiled her complaint under the savings statute, section 78–12–40 of the Utah Code, again naming Willowcreek Plaza in the caption but this time serving the complaint on Valley Bank and Dime Savings, naming them as defendants in the body of the complaint. Valley Bank and Dime Savings moved to dismiss, arguing that they could not be sued under the name "Willowcreek Plaza." Hebertson opposed the motion to dismiss, arguing that Valley Bank and Dime Savings could be sued under the name "Willowcreek Plaza" because they were "transact[ing] business under a common name." See Utah R.Civ.P. 17(d). Valley Bank and Dime Savings produced the affidavit of Brad R. Baldwin, general counsel for Valley Bank, asserting that "[a]t no time . . . did Valley Bank and Dime Savings transact business as 'Willowcreek Plaza.'" The trial court granted the banks' motion to dismiss.[2]

Hebertson appealed the dismissal to this court, and we poured the case to the Utah Court of Appeals. The court of appeals affirmed the trial court, reasoning that there was "insufficient evidence that Valley Bank and Dime Savings transacted business or held themselves out to the public under the

---

1. Hebertson apparently opposed the motion to dismiss and, in the alternative, moved to amend the complaint to name Valley Bank and Dime Savings. The trial court in that action apparently dismissed the action because Valley Bank and Dime Savings had not been served within the 120 days provided by rule and, having dismissed the action, did not reach the motion to amend. Neither party to this appeal has provided any documentation of this first action, so we are forced to reconstruct the events, as best we can, from the parties' descriptions in their briefs and their statements at oral argument. Needless to say, our decision does not turn on any facts relating to this first action.

2. Because Valley Bank and Dime Savings presented Baldwin's affidavit with their motion to dismiss and the trial court did not specifically exclude that evidence, the motion to dismiss should have been treated as a motion for summary judgment under Utah Rule of Civil Procedure 56. See Utah R.Civ.P. 12(b) ("If . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . ."). The parties conceded at oral argument before the court of appeals that the trial court's "ruling is best characterized as a grant of summary judg-

ment." Hebertson v. Willowcreek, 895 P.2d 839, 840 n. 1 (Utah Ct.App.1995). Neither party challenged this characterization on appeal.

We also note that rule 12 further provides that once evidence outside the pleadings is presented, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Utah R.Civ.P. 12(b). We have held that "it is necessary that the record clearly and affirmatively demonstrate that when a motion to dismiss is made and '. . . matters outside the pleading are presented to and not excluded by the court . . .' that all parties . . . are given reasonable opportunity to present additional pertinent material if they wish." Bekins Bar V Ranch v. Utah Farm Prod. Credit Ass'n, 587 P.2d 151, 152 (Utah 1978) (quoting Utah R.Civ.P. 12(b)). Apparently, Hebertson was never given additional time nor allowed any discovery which might have produced evidence that the banks were doing business under the common name "Willowcreek Plaza." However, nothing in the record presented to this court indicates that Hebertson ever asked for such time or discovery. Moreover, Hebertson failed to raise this issue on appeal, and we will therefore not address it. Scott v. Hammock, 870 P.2d 947, 956 & n. 6 (Utah 1994).

*common name of Willowcreek Plaza....* 'Willowcreek Plaza' was merely the name given to the property...." *Hebertson*, 895 P.2d at 841. The court of appeals concluded that "the mere name accorded a piece of property does not constitute doing business under that name for purposes of Rule 17(d)." *Id.* Hebertson sought review by this court, and we granted certiorari. *Hebertson v. Willowcreek Plaza*, 910 P.2d 425 (Utah 1995).

■ We first identify the appropriate standard of review. "On certiorari, we review the decision of the court of appeals, not the decision of the trial court." *State v. Harmon*, 910 P.2d 1196, 1199 (Utah 1995) (citing *Butterfield v. Okubo*, 831 P.2d 97, 101 n. 2 (Utah 1992)). In reviewing the court of appeals' opinion, we adopt the same standard of review used by that court: "[Q]uestions of law are reviewed for correctness, and the trial court's factual findings are reversed only if clearly erroneous." *Id.* (citing *Landes v. Capital City Bank*, 795 P.2d 1127, 1129 (Utah 1990)). The court of appeals, after noting that Valley Bank and Dime Savings conceded that they were doing business together, went on to find "that the mere name accorded a piece of property does not constitute doing business under that name for purposes of Rule 17(d)." *Hebertson*, 895 P.2d at 841. This is a conclusion of law which we review for correctness. *State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

■ We begin by examining Utah Rule of Civil Procedure 17(d), which provides, "When two or more persons associated in any business ... not a corporation, transact such business under a common name ... they may sue or be sued by such common name." Utah R.Civ.P. 17(d). Clearly the rule contemplates two factors: (i) parties transacting business, and (ii) transacting such business *under a common name*. In this case, the parties conceded at oral argument that Valley Bank and Dime Savings were transacting business when they assumed title to the property, pursuant to a participation agreement, and entered into leases with various tenants for portions of the property. However, there was simply no evidence before the court suggesting that Valley Bank and Dime Savings ever transacted business under the name "Willowcreek Plaza." All evidence of business transacted by the two banks, i.e., the leases entered into with various tenants and the participation agreement itself, indicate that business was done in the name of Valley Bank and Trust Company. Even the leases themselves do not consistently refer to the property by the name "Willowcreek Plaza."

■ We do not here articulate a test for determining when parties are transacting business under a common name: We simply hold that the name of a building owned by parties transacting business together, even if such business relates solely to that building, is not enough, without more, to establish that the parties were transacting business under the name of the building for purposes of rule 17(d). Hebertson argues to the contrary but cites no authority for her contentions. We have researched the question exhaustively and can find no authority on the point, a fact which we take as evidence for the proposition that the rule we announce is so clear it has never been deemed worthy of address by any appellate court. Our decision today should settle this hitherto unasked question for Utah. We therefore affirm the court of appeals' ruling upholding the trial court's dismissal of Hebertson's complaint.

STEWART, Associate C.J., and HOWE and RUSSON, JJ., concur in Chief Justice ZIMMERMAN's opinion.